IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| RANDY POITRA,<br><br>       Plaintiff(s),<br><br>   vs.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>       Defendant. | Case No. 3:20-cv-00123-PDW-ARS |

**SCHEDULING/DISCOVERY PLAN**

Pursuant to Rule 26(f), counsel for the parties certify that on **August 27, 2020**, they conferred in person or by telephone to discuss the nature and basis of their clients' claims and defenses, the possibilities for a prompt settlement or resolution of the case, and a proposed discovery plan. After conferring, counsel for the parties have agreed upon the following:

(1)    The parties shall make by **9/17/2020** Rule 26(a)(1) initial disclosures.

(2)    The parties propose the following discovery plan:

   (a)    Discovery will be needed on these subjects

      i.  *Plaintiff*

Prior to the commencement of this action, claims alleging atherosclerotic-related injuries caused by Tasigna were filed against NPC in the Eastern District of California (Kristi Lauris v. Novartis AG et al., 1:16-cv-00393-LJO-SAB) and the Southern District of Florida (Dennis McWilliams v. Novartis AG et al., 2:17-cv-14302-RLR). Counsel for Plaintiff here did not appear in these actions. Both of these cases were resolved shortly before scheduled trial dates and after

the completion of fact and expert discovery and subsequent denial of NPC's Summary Judgement Motion.

The parties are meeting and conferring as to the whether the discovery conducted in those cases may be applicable to the matter at bar. Plaintiff's counsel here, does not have knowledge of the extent of this prior discovery and therefore reserves all rights to conduct discovery on all matters relevant to the claims and defenses herein. In order to facilitate this process, Plaintiff requested an initial, informal exchange of certain information. Defendant has provided some preliminary information and has produced the collection of documents that were provided in those cases. The parties are continuing to meet and confer to determine the scope of discovery that was completed in the prior actions and the additional discovery needed here. There is undoubtedly additional discovery that will be required to address the needs of this case.

For example, Plaintiff is aware that the timeframe covered by the discovery conducted in those two cases ended in approximately 2014. Plaintiff will seek additional discovery up to the present. There are also likely to be additional areas of discovery relevant to the particular claims and defenses which are unique to this particular case which the parties intend to discuss.

At this time Plaintiff anticipates he will request discovery into NPC's conduct surrounding the following areas as they relate to Tasigna® along with any additional areas of discovery that may be revealed as the case progresses:

  a. Licensing;
  b. Research & Development;
  c. Patents;
  d. Preclinical Development;
  e. Clinical Development;
  f. Medical Affairs;
  g. Medical Coding;
  h. Pharmacovigilance/Drug Safety;
  i. Health Insurance Reimbursement;
  j. Life Cycle Management;

      k. Marketing;
      l. Labeling;
      m. Market Research;
      n. Sales and Sales Training;
      o. Key Opinion Leaders and/or Speakers' Bureaus;
      p. Budgeting; and
      q. Regulatory or compliance functions, including those related to the FDA and other foreign regulatory bodies

Finally, the Court should be aware there are approximately 40 cases involving similar claims currently pending in several Federal Districts across the United States, as well as in New Jersey State Court. The parties are discussing coordination of discovery in these actions.

    ii. *NPC*

As an initial matter, it is unclear at this stage the scope of the discovery that plaintiff may seek from NPC. Plaintiff will likely seek to depose numerous current and former employees of NPC and the production of millions of pages of NPC documents. Although plaintiff's counsel will have access to discovery taken in two prior cases involving Tasigna®, plaintiff has indicated an intent to take additional discovery to cover an additional six years of information on top of the discovery in the previous litigation. NPC is a defendant in more than three dozen cases in federal courts and in New Jersey state court involving claims arising from treatment with NPC's product, Tasigna®. The parameters and scope of discovery of NPC in these matters merits informal coordination in terms of protocols such as search terms and custodians. The parties have begun these discussions, but it will take time to confer and reach agreements about these issues. Importantly, this case implicates an array of scientific, medical, and regulatory issues that will be the subject of wide-ranging expert reports and testimony. NPC anticipates that the parties will designate a dozen, or perhaps more expert witnesses (six per party, or more), which does not include the numerous treating physicians who will need to be deposed. NPC expects that it will

3

seek evidentiary hearings on its *Daubert* motions that will challenge the admissibility of plaintiff's experts.

Discovery in this case includes the need to obtain copies of medical records from plaintiff's healthcare providers. NPC will, among other things, request medical records and depositions of plaintiff's healthcare providers. Given the allegations concerning his complicated health status, there will be a large number of providers relevant to both his cancer treatment and his treatments for his vascular disease. NPC has been given some medical records by plaintiff's counsel voluntarily. NPC cannot tell at this stage whether those collections are complete, and there are additional providers whose records will be relevant and will need to be collected.  NPC is entitled to use the discovery process to ensure access to complete medical files regarding plaintiff. The records collection process takes time, and is iterative in nature. As each set of records is received, they must be reviewed, and follow-up undertaken, to ensure that the provider has produced a complete set of records. Also, review of collected records inevitably leads to the identification of additional healthcare providers or locations of treatment, and new requests must be made to collect those. Although the parties work diligently to collect records, often facilities take significant amounts of time to respond to requests.

NPC will also seek discovery to identify and depose additional witnesses and documents relevant to plaintiff's damages claims.

(b) Disclosure, discovery, or preservation of electronically stored information should be handled as follows:

The parties have agreed to a stipulated ESI Protocol and intend to file the same with the Court.

NPC also requests that the Court enter a standard Rule 502(d) order (**Ex. 1**). Plaintiff does not oppose this request.

(c) The parties have discussed any issues regarding preservation of discoverable information as follows:

Each party recognizes the duty to preservation of electronically stored information related to this case. The parties at this time do not anticipate issues related to the disclosure, discovery, or preservation of such information.

(d) The parties have discussed possible need for a protective order as follows:

At this time, NPC requests the entry a Protective Order related to the disclosure of information in this case (**Ex. 2**). Plaintiff does not oppose NPC's request.

(e) If this is a case that will involve the discovery of medical, mental health, employment, education, tax, or workers compensation records, the parties have agreed to the following with respect to who will secure these records and how the discovery of the records will be handled (*it will not be a sufficient answer that the parties have not addressed the issue or it will be considered later*):

NPC has provided plaintiff with authorizations for release of records, and to which plaintiff has agreed to execute. Upon plaintiff's execution and return of these authorizations, NPC, through its vendor, will collect and store plaintiff's records for review. The parties also agree to provide records in accordance with their obligations under the federal rules of civil procedure in response to proper discovery requests.

If the parties have not reached an agreement all or in part, the following is what the parties have not been able to agree to and the reasons why (*if applicable, this section must be completed*): N/A

(f)     The parties have agreed to the following maximum number of interrogatories **per side**: **25**

(g)     The parties have agreed to the following maximum number of requests for admissions **per side**: **25**

(h)     The parties have agreed to the following maximum number of requests for production of documents **per side**: NPC's Proposal: **75;** Plaintiff's Proposal: **No limit.**

Given the complex nature of this case and the early stage of discovery Plaintiff does not believe placing a limit on requests for production of documents is proper at this time. As detailed above, there are numerous areas of discovery that Plaintiff intends to investigate and it is difficult, at this time, to quantify the number of requests for production that will be required.

NPC proposes limiting the request for production of documents to 75 per side. Plaintiff has already received 10.6 million documents produced in prior Tasigna® matters as well as several corporate deposition transcripts. Plaintiff should be able to limit his requests to 75 given the amount of documents Plaintiff already has available for review.

(i)     The parties have agreed to the following maximum number of depositions **per side**: Plaintiff's Proposal **15**; NPC's Proposal: **10.**

The parties also agree that any limit on the number of depositions applies only to fact witnesses, and that depositions of the parties' designated experts should not count toward the parties' limits. The number of depositions Plaintiff requests in this case will likely depend on the prior discovery described above. However, at this time, Plaintiffs do not anticipate requesting more than fifteen (15) depositions of fact witnesses. After the parties have met and conferred regarding

previous discovery and depositions and what additional discovery is needed, Plaintiff will confer with NPC in an attempt to reach an agreement as to the number of additional depositions required at this time. Plaintiff also anticipates that depositions of NPC's fact witnesses can be coordinated with those cases pending in other Federal Courts and the State of New Jersey, so as to avoid duplicative efforts. The parties reserve their right to seek additional fact depositions by agreement of the parties or by Court order.

NPC proposes a limit of 10 depositions for fact witnesses as set forth in Fed. R. Civ. P. 30(a)(2)(A)(ii). Plaintiff should be required to follow the Federal Rules to request additional depositions should he wish to depose more than 10 of NPC's fact witnesses.

(j) The parties have agreed any depositions taken only for presentation at trial will be completed at least **30** days prior to trial.

(k) The parties have agreed that all fact discovery will be completed by the following deadline, with all written discovery to be served a minimum of thirty (30) days prior to the deadline:

**6/1/2022**

(l) The parties have agreed on the following deadline for discovery motions:

**5/1/2022**

(m) An appropriate time for a mid-discovery status conference would be: **10/15/2021**

(n) The parties have agreed on the following deadlines for exchanging complete expert

7

      witness reports:

          **1/15/2022**    for plaintiff(s);

          **2/15/2022**    for defendant(s); and

          **3/1/2022**    for any rebuttal experts.

(o)    The parties have agreed on the following deadline to complete discovery depositions of expert witnesses:

          **5/1/2022:**    Depositions of plaintiff's expert witnesses

          **6/1/2022:**    Depositions of defendant's expert witnesses

(3)    The parties have agreed to the following deadlines for filing motions:

          **12/2/2020**    motions to join additional parties;

          **10/2/2021**    motions to amend pleadings;

          **1/15/2022**    motions to amend pleadings to add punitive damages claims – **NPC's Proposal**;

          **6/15/2022**    motions to amend pleadings to add punitive damages claims – **Plaintiff's Proposal**;

          **9/1/2021**    nondispositive motions (e.g. consolidation, bifurcation); and

          **6/30/2022**    dispositive motions (e.g. summary judgment).

The parties agree that there is good cause for the dispositive motions deadline to be extended beyond July 14, 2021 based on the significant amount of work to be done in this case and the time necessary to complete fact and expert discovery. Fact discovery includes plaintiff seeking significant volumes of corporate discovery, including depositions and

8

documents, as well as NPC's depositions of numerous third party witnesses, which can occur only after full records are collected. Expert discovery will follow the fact discovery, and will be substantial with likely a dozen or more experts (total, i.e., including both sides) who will need to be deposed after they review the fact discovery and prepare their reports. Based on counsel's experience in these cases, the parties believe this timeline is appropriate, especially in light of COVID-19 and the expectation that it may impact time frames for third party discovery of physicians here.

(4) The parties have discussed alternative dispute resolution and plan as follows:

- ☐ A court-hosted settlement conference;
- ☑ Private mediation; or
- ☐ Other (explain):

(5) The parties shall be ready to evaluate the case for settlement purposes by:

**6/30/2022**

(6) The parties **will not** waive their rights to proceed before a district judge and consent to have a magistrate judge conduct all further proceedings in the case, including the trial, and order for entry of a final judgment.

(7) Trial of this case will be **jury**.

(8) The estimated length of trial is **10-15** days.

Dated: September 15, 2020

| | |
|---|---|
| /s/*Tatum O'Brien* | /s/ *Angela E. Lord* |
| **O'KEEFE O'BRIEN LYSON FOSS ATTORNEYS** | Angela E. Lord (#05351) |
| Tatum O'Brien, Esq. (ND ID #05985) | Email: alord@vogellaw.com |
| 720 Main A venue | Charlotte J. Skar Rusch (#06528) |
| Fargo, ND 58103 | Email: crusch@vogellaw.com |
| Telephone: 701-235-8000 | Vogel Law Firm |
| tatum@okeefeattorneys.com | 218 NP Avenue |
| | PO Box 1389 |
| Raymond C. Silverman *(Pro Hac Vice Anticipated)* | AND |
| **PARKER W AICHMAN LLP** | Robert E. Johnston, Esq. (*Pro Hac Vice application pending*) |
| 6 Harbor Park Dr. | rjohnston@hollingsworthllp.com |
| Port Washington, NY 11050 | Donald R. McMinn, Esq. (*Pro Hac Vice application pending*) |
| Telephone: 516-466-6500 | dmcminn@hollingsworthllp.com |
| Facsimile: 516-466-6665 | Andrew L. Reissaus, Esq. (*Pro Hac Vice application pending*) |
| rsilverman@yourlawyer.com | Hollingsworth LLP |
| *Attorneys for Plaintiff* | 1350 I Street Northwest |
| | Washington, District of Columbia 20005 |
| | (202) 898-5800 |
| | |
| | *Attorneys for Defendant* |
| | *Novartis Pharmaceuticals Corporation* |

## ORDER

The parties' Scheduling/Discovery Plan is adopted as the Order of the Court with the following modifications:

(1) Each party shall serve no more than 75 requests for production of documents.

(2) Each party shall take no more than 15 fact witness depositions.

(3) The parties shall have until June 15, 2022, to file discovery motions.

(4) The parties shall have until January 15, 2022, to move to amend the pleadings to add claims for punitive damages.

(5) A mid-discovery status conference is set for May 7, 2021, at 9:00 AM. Plaintiff shall initiate the call. The telephone number for chambers is 701-297-7070.

Dated this 1st day of October, 2020.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge